732 So.2d 1037 (1998)
THE FLORIDA BAR, Complainant,
v.
Alec Joseph ROSS, Respondent.
No. 89,012.
Supreme Court of Florida.
December 24, 1998.
Rehearing Denied May 6, 1999.
*1038 John F. Harkness, Jr., Executive Director and John Anthony Boggs, Staff Counsel, Tallahassee, and Cynthia Lindbloom, Bar Counsel, Miami, for Complainant.
Richard B. Marx, Miami, for Respondent.
PER CURIAM.
We have for review the referee's report and recommendations regarding alleged ethical violations by attorney Alec Joseph Ross. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed in this opinion, we approve the referee's factual findings and recommendation of guilt, as well as the recommended discipline.

I. THE REFEREE'S FINDINGS AND RECOMMENDATIONS
The referee made the following factual findings: Ross represents himself as a real estate investor, in particular a foreclosure buyer.[1] In August 1994, County Collection Services, Inc., obtained a summary judgment of foreclosure against property owned by Roger Quisenberry in Palm Beach County. Ralph Lazar purchased the property at foreclosure sale. Ross was a tenant of Quisenberry's on an unrelated *1039 property. The tenancy resulted in a dispute between Ross and Quisenberry.
Quisenberry retained attorney Kim St. James to represent him in setting aside the foreclosure sale. St. James filed a motion to set aside the sale which included Quisenberry's affidavit stating that he was out of town during the time the foreclosure sale was finalized and had not received notice. Ross was aware of the affidavit and believed that information contained in it was false.
In November 1994, Ross contacted Lazar and told him he had information that would be helpful in refuting Quisenberry's motion and affidavit. Ross requested a one-half interest in the property Lazar had purchased at the foreclosure sale in exchange for the information and documentation he could provide. Subsequently, Ross contacted Lazar's attorney, Steven Newburgh, and repeated his request for a one-half interest in the property in exchange for his information. Newburgh told Ross that the only consideration he would be offered was a check for $7.40 for a witness fee. When Newburgh told Ross that he would be taking Ross's deposition, Ross did not indicate that he would be out of town or on vacation and unavailable for deposition or for the hearing on the motion to set aside the sale.
A witness subpoena was issued scheduling Ross's deposition for December 8, 1994. In late November 1994, upon receiving the notice of Ross's deposition, St. James contacted Ross to determine what he knew about the matter and informed Ross that his deposition was scheduled for December 8. Ross told St. James that he had not yet been served with a subpoena and that, in exchange for a fee,[2] he would make himself unavailable for deposition or for service of the subpoena for deposition or both and would be unavailable for trial.
Ross admitted that he told St. James he was going on vacation and if her client paid him money he could leave town sooner and stay away longer. Ross testified that he sought the money to settle a claim against Quisenberry on the unrelated property. St. James testified that she believed Ross was soliciting a bribe.
Ross contacted St. James again seeking an answer from Quisenberry regarding the payment of money in exchange for his unavailability. St. James rejected Ross's offer. Ross sent several faxes to Newburgh renewing his requests for an interest in the subject property in exchange for his information. Newburgh did not respond.
Ross made it appear that he was unavailable for deposition and the hearing. When the process server attempted service on Ross on November 28, 1994, he found a note affixed to Ross's door indicating that Ross was on vacation until December 20. Ross knew that the hearing on Quisenberry's motion to set aside the foreclosure sale was scheduled for December 19. Newburgh filed a motion for continuance based upon Ross's apparent disappearance. Ross did not freely assist in the action until after a complaint was filed with the Bar.
The referee recommended finding Ross guilty of violating rule 4-8.4(c), Rules Regulating The Florida Bar (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee further relied on Standards 5.11(b) and (f), Florida Standards for Imposing Lawyer Sanctions, in recommending that Ross be disbarred.

II. CONTINUING DISCIPLINARY JURISDICTION
Before reviewing the referee's findings and recommendations in the present case, we take this opportunity to address and *1040 clarify the bases of our continuing disciplinary jurisdiction over attorneys who are already under suspension (such as Ross in the present case, see supra note 1); attorneys who have been disbarred; and attorneys who have resigned in the face of disciplinary charges.

A. BAR MEMBERSHIP

Rule 3-5.1(e), Rules Regulating The Florida Bar, specifically provides that "[d]uring ... suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing." (Emphasis added.) Citing rule 3-5.1(e), this Court in Florida Bar v. Solomon, 589 So.2d 286 (Fla.1991), disbarred an attorney for acts of misconduct committed during the attorney's suspension, holding that "[a]lthough under suspension, [the subject attorney] is still a member of The Florida Bar. As such, he is subject to the standards of ethical and professional conduct prescribed by this Court.'" Id. at 287 (citation omitted).
Thus, despite the fact that an attorney is suspended, he or she remains a member of The Florida Bar and, as such, is subject to the continuing disciplinary jurisdiction of this Court to the same extent as any other member of The Florida Bar. See generally, art. V, § 15, Fla. Const. ("The supreme court shall have exclusive jurisdiction to regulate ... the discipline of the persons admitted [to the practice of law].").
The same is not true of attorneys who have been disbarred or who have resigned in the face of disciplinary charges, as such attorneys are no longer "members" of The Florida Bar. See R. Regulating Fla. Bar 3-5.1(f) ("A judgment of disbarment terminates the respondent's status as a member of the bar."); R. Regulating Fla. Bar 3-5.1(j) ("If accepted by the Supreme Court of Florida, a disciplinary resignation terminates the respondent's status as a member of the bar.").

B. UNLICENSED PRACTICE OF LAW

Chapter 10 of the Rules Regulating The Florida Bar, which governs the investigation and prosecution of the unlicensed practice of law, specifically provides that "[f]or purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to ... disbarred lawyers, and suspended lawyers during the period of suspension."[3] R. Regulating Fla. Bar 10-2.1(b) (emphasis added). Although not explicitly named, this definition of "nonlawyer or nonattorney" implicitly includes attorneys who have resigned in the face of disciplinary charges. Such resigned attorneys also are not members of The Florida Bar.
Accordingly, suspended attorneys, disbarred attorneys, and attorneys who have resigned in the face of disciplinary charges are not members of The Florida Bar under chapter 10, but are instead "nonlawyers or nonattorneys" subject to the jurisdiction of this Court if they engage in the unlicensed practice of law.[4] While not necessarily referring specifically *1041 to chapter 10, this Court has consistently imposed additional discipline upon already-disciplined attorneys for engaging in the unauthorized practice of law during their existing discipline. See, e.g., Florida Bar v. Neckman, 616 So.2d 31, 32 (Fla.1993) (publicly reprimanding attorney who had resigned in the face of disciplinary charges, holding that "the unauthorized practice of law by one who has resigned the license to practice rather than face disciplinary proceedings is the equivalent of violating a prior disciplinary order of this Court," and that "it is proper for discipline to be imposed upon an attorney who has temporarily resigned the license to practice law."); Florida Bar v. Golden, 563 So.2d 81, 81-82 (Fla.1990) (imposing additional suspension upon attorney who violated the terms of his existing suspension, holding that "counselling and attempting to assist his client in requesting two continuances [during the subject attorney's period of suspension] constituted the unauthorized practice of law"); Florida Bar v. Riccardi, 304 So.2d 444, 445 (Fla. 1974) (finding in contempt and issuing permanent injunction against disbarred attorney due to his unauthorized practice of law after disbarment). See also Florida Bar v. Greene, 589 So.2d 281, 282-83 (Fla.1991) (disbarring attorney for continuing to practice law while suspended, holding that "[w]e have found disbarment appropriate in other cases in which attorneys have engaged in the practice of law while suspended").

C. CONTEMPT

Orders from this Court suspending an attorney, disbarring an attorney, or accepting an attorney's disciplinary resignation typically contain language to the effect that the subject attorney "shall accept no new business from the date this order is filed." Such orders may also impose additional restrictions or conditions related to the discipline at issue. If an attorney subject to such a disciplinary order violates same, he or she stands in contempt of this Court's order. See generally Black's Law Dictionary 319 (6th ed. 1990) (defining "contempt of court" as being committed by "one who, being under the court's authority as a party to a proceeding therein, willfully disobeys its lawful orders"). In addition to this Court's inherent contempt powers,[5] rule 3-7.11(f), Rules Regulating The Florida Bar, specifically provides in pertinent part that "a respondent in a disciplinary proceeding may be cited for contempt by petition for an order to show cause filed and heard in the Supreme Court of Florida."
Thus, suspended attorneys, disbarred attorneys, and attorneys who have resigned in the face of disciplinary charges are all subject to the continuing jurisdiction of this Court by virtue of the respective orders under which they were disciplined. See Fla. Stds. Imposing Law. Sancs. 8.0 ("Prior Discipline Orders") (specifically listing "sanctions [that] are generally appropriate in cases involving prior discipline").[6] This Court has consistently *1042 imposed additional discipline upon already-disciplined attorneys for violating the terms of existing disciplinary orders. See, e.g., Florida Bar v. Neely, 675 So.2d 592, 593 (Fla.1996) (permanently disbarring already disbarred attorney for "violating this Court's disbarment order" by continuing to practice law after he was disbarred); Florida Bar v. Hawkins, 643 So.2d 1074, 1075 (Fla.1994) (holding in contempt and disbarring attorney for violating the terms of her disciplinary resignation by failing to, among other things, submit an affidavit swearing that she had provided each of her clients a copy of the resignation order or notify her clients where to pick up their files; holding that "[i]n light of [the subject attorney's] clear violation of our order allowing her to resign from the Bar and her apparent attempt to avoid service in this matter, we agree that disbarment is warranted"); Florida Bar v. Brown, 635 So.2d 13, 13-14 (Fla.1994) (holding in contempt and disbarring attorney for violating the terms of his disciplinary resignation by continuing to practice law after disciplinary resignation; holding that "[c]lear violation of any order or disciplinary status that denies an attorney the license to practice law generally is punishable by disbarment, absent strong extenuating factors"). See also Florida Bar v. Simring, 612 So.2d 561, 570-71 (Fla.1993); Florida Bar v. Bouman, 558 So.2d 994, 994 (Fla.1990); Florida Bar v. Winter, 549 So.2d 188, 189 (Fla.1989).

III. REVIEW OF REFEREE'S FINDINGS AND RECOMMENDATIONS
Having established our continuing disciplinary jurisdiction over Ross in the present case, we now review the referee's findings and recommendations:
The referee recommended that we find Ross guilty of violating rule 4-8.4(c), Rules Regulating The Florida Bar (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Ross asserts that rule 4-8.4(c) is unconstitutionally vague. He argues that neither the rule nor statute defines "dishonesty" and that the common meaning of the word does not convey a sufficiently definite warning of the conduct to which it applies.
We reject Ross's argument that rule 4-8.4(c) is unconstitutionally vague and find that a person of common intelligence could be expected to understand the conduct proscribed by the rule. We further reject Ross's argument that the referee's factual findings are clearly erroneous and lacking evidentiary support. A referee's findings are presumed correct and must be upheld unless clearly erroneous or without support in the record. Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla. 1994).[7]
The referee relied on standards 5.11(b) and (f), Florida Standards for Imposing Lawyer Sanctions, in recommending that Ross be disbarred.[8] The referee *1043 considered in aggravation the fact that Ross acted with a dishonest or selfish motive, that he refused to acknowledge the wrongful nature of his conduct, and that he had a prior disciplinary record.[9]
Ross argues that disbarment is too severe a sanction. We disagree and find that the sanction is comparable to sanctions imposed for like conduct. This Court has not been hesitant to disbar attorneys whose actions undermined the integrity of the judicial process. See Florida Bar v. Swickle, 589 So.2d 901 (Fla.1991) (disbarment ordered where attorney suggested he had the ability to bribe a judge to reduce a criminal defendant's bond, even though the attorney was acquitted on criminal charges arising from the incident); Florida Bar v. Rendina, 583 So.2d 314 (Fla.1991) (attorney disbarred for attempting to bribe an assistant state attorney to obtain a lesser criminal sentence for his client); Florida Bar v. Rambo, 530 So.2d 926 (Fla.1988) (attorney disbarred for bribing county commissioner to receive favorable rezoning of a client's property); Florida Bar v. Riccardi, 264 So.2d 5 (Fla.1972) (attorney disbarred for bribing IRS agent to influence the determination of tax liability of a third party).
Ross's misconduct exceeds that of the attorneys in Florida Bar v. Colee, 533 So.2d 767 (Fla.1988), and Florida Bar v. Jackson, 490 So.2d 935 (Fla.1986), on which Ross relies. In Colee, the attorney was suspended for ninety days after he approached the attorney for a defendant against whom a $1,000,000 verdict had been entered and told the attorney he was aware of evidence which could possibly prove a fraud on the Court, suggesting that the evidence was worth $200,000. In Jackson, the attorney was suspended for three months for approaching a New York attorney and requesting that his clients be paid $50,000 for testifying in a pending insurance claim in New York. In the instant case, in addition to requesting payment for his own testimony, Ross attempted to obtain a fee in exchange for avoiding giving testimony. Ultimately, Ross avoided service of a subpoena by falsely representing himself to be out of town for an extended period of time.
In light of Lawyer Sanction Standard 5.11(f),[10] the aggravating factors present in this case, and the cases discussed above, we find no basis to deviate from the referee's recommended discipline. Ross's conduct in attempting to subvert the truthseeking process for his own financial gain demonstrates his lack of fitness to practice law. We accept the referee's recommendation that Ross be disbarred.

IV. CONCLUSION
Alec J. Ross is hereby disbarred from the practice of law from the date of the referee's report. We also enter judgment against Ross in favor of The Florida Bar for costs in the amount of $3,811.85, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Ross was suspended from the practice of law for ninety-one days in 1990, see Florida Bar v. Ross, 576 So.2d 293 (Fla.1990), and this Court denied his petition for reinstatement in 1992. The published decision in Florida Bar re Ross, 599 So.2d 658 (Fla.1992) (table, no. 77,649), reflects otherwise, but is in error. See Florida Bar re Ross, No. 77,649 (Fla. May 7, 1992)(on file at the Florida Supreme Court). Thus, Ross has never been reinstated and currently remains suspended from the practice of law.
[2] Ross first requested a few thousand dollars and ultimately increased his demand to "$6,000 or $7,000."
[3] But for the language limiting this definition of "nonlawyer or nonattorney" to the "purposes of this chapter," such nonmember status of suspended attorneys in Chapter 10 would directly contradict rule 3-5.1(e), which specifically provides that "[d]uring ... suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing." (Emphasis added).
[4] Under Chapter 10:

Upon receiving a sworn petition of the president of The Florida Bar, or the chair of the standing committee, alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law.
R. Regulating Fla. Bar 10-7.2(a)(1).
[5] See Walker v. Bentley, 678 So.2d 1265, 1267 (Fla.1996) ("[T]his Court has repeatedly found that the power of a court to punish for contempt is an inherent one that exists independent of any statutory grant of authority and is essential to the execution, maintenance, and integrity of the judiciary.").
[6] Standard 8.0, Florida Standards for Imposing Lawyer Sanctions, provides:

Absent aggravating or mitigating circumstances, and upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving prior discipline.
8.1 Disbarment is appropriate when a lawyer:
(a) intentionally violates the terms of a prior disciplinary order and such violation causes injury to a client, the public, the legal system, or the profession; or
(b) has been suspended for the same or similar misconduct, and intentionally engages in further similar acts of misconduct.
8.2 Suspension is appropriate when a lawyer has been publicly reprimanded for the same or similar conduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.
8.3 Public Reprimand is appropriate when a lawyer:
(a) negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or
(b) has received an admonishment for the same or similar misconduct and engages in further acts of misconduct.
8.4 Admonishment is not an appropriate sanction when a lawyer violates the terms of a prior disciplinary order or when a lawyer has engaged in the same or similar misconduct in the past.
[7] We also reject Ross's claim that the referee erred in using factual findings prepared by the Bar rather than preparing independent factual findings. Ross made no objection when the referee explained that she would ask the prevailing party to prepare the "paperwork." Although Ross complains that he was not given an opportunity to object to the proposed report, he made no attempt to object until the hearing on discipline. We find no error in the referee's refusal to consider objections raised at that time.
[8] Standard 5.11(b) provides that disbarment is appropriate when "a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, mis-appropriation, or theft." Standard 5.11(f) provides that disbarment is appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."
[9] Ross received a private reprimand and six-months' probation in 1988. He was suspended for ninety-one days in 1990, and has never been reinstated. See supra note 1.
[10] Because Ross has not been charged with a crime, we express no opinion on the application of Standard 5.11(b) to these facts.