## STATEWIDE GRIEVANCE COMMITTEE *v.* NANCY BURTON (AC 25284)

Foti, Dranginis and Bishop, Js.

Argued January 7—officially released April 19, 2005

*Michael P. Bowler*, acting bar counsel, for the appellant (plaintiff).

*Nancy Burton*, pro se, the appellee (defendant), filed a brief.

*Opinion*

DRANGINIS, J. The issue in this appeal is whether a trial court has subject matter jurisdiction over a presentment complaint (presentment), filed pursuant to Practice Book § 2-47,[1] alleging misconduct by an attorney who was disbarred subsequent to the events alleged in the presentment. We conclude that the court has subject matter jurisdiction because the issue is justiciable.

The plaintiff, the statewide grievance committee, appeals from the judgment of the court, *Mintz, J.*, dismissing the presentment for lack of subject matter jurisdiction. The court concluded that it did not have jurisdiction because the defendant, Nancy Burton, *already* had been disbarred. On appeal, the plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction. We agree.[2]

---

[1] Practice Book § 2-47 (a) provides in relevant part: "*Presentment of attorneys for misconduct*, whether or not the misconduct occurred in the actual presence of the court, shall be made by written complaint of the statewide grievance committee or a reviewing committee. Service of the complaint shall be made as in civil actions. . . . After such hearing the court shall render a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or *such other discipline as the court deems appropriate.* This may include conditions to be fulfilled by the attorney before . . . she may apply for readmission or reinstatement. . . ." (Emphasis added.)

[2] The defendant failed to appear for oral argument before this court, thereby waiving her right to present oral argument. See *Lauer* v. *Zoning Commission*, 246 Conn. 251, 253 n.4, 716 A.2d 840 (1998).

In her brief, the defendant argued that the court should have dismissed the presentment as a disciplinary sanction and granted her motion for sanctions against the plaintiff, its attorneys and several others. The defendant, however, failed to raise these claims in a cross appeal pursuant to Practice Book § 61-8. We decline to review the claims, as they are not properly before this court. See *Housing Authority* v. *Charter Oak Terrace/Rice Heights Health Center, Inc.*, 82 Conn. App. 18, 19 n.1, 842 A.2d 601 (2004).

The incident that forms the basis of the presentment occurred in 1995 (1995 incident) and has spawned, directly or indirectly, prior appeals to this court. See *Burton* v. *Statewide Grievance Committee*, 80 Conn. App. 536, 835 A.2d 1054 (2003), cert. denied, 268 Conn. 907, 845 A.2d 410 (2004); *Burton* v. *Statewide Grievance Committee*, 60 Conn. App. 698, 760 A.2d 1027 (2000). In the earlier appeal, directly related to the 1995 incident, this court reversed the judgment of the trial court, *McWeeny, J.*, affirming the decision of the plaintiff to reprimand the defendant for violation of rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. The case was remanded to the trial court with orders to reverse the judgment dismissing the defendant's appeal and to remand the matter to the plaintiff for further proceedings. *Burton* v. *Statewide Grievance Committee*, supra, 60 Conn. App. 707.

Subsequently, in November, 2001, the court, *Mottolese, J.*, disbarred the defendant from the practice of law in this state for misconduct that occurred subsequent to the 1995 incident. See *Sullivan* v. *Monroe*, Superior Court, judicial district of Fairfield, Docket No. 370545 (November 2, 2001).[3] The defendant thereafter filed a writ of error to contest her disbarment. Our Supreme Court dismissed the writ of error, thereby upholding the defendant's disbarment. *Burton* v. *Mot-*

---

[3] Judge Mottolese ordered as follows: "The court hereby orders that Nancy Burton be disbarred from the practice of law in this state and that she be prohibited from applying for readmission for a period of five years. Any application for readmission shall comply with the provisions of Practice Book § 2-53 and in addition shall comply with the following:

"1. Successful completion of a course in Connecticut civil practice and procedure at an accredited law school.

"2. Successful completion of a course in professional responsibility and legal/ethics at an accredited law school.

"3. Pass the multi-state examination in professional responsibility administered under the auspices of the Connecticut Bar Examining Committee." *Sullivan* v. *Monroe*, supra, Superior Court, Docket No. 370545.

*tolese*, 267 Conn. 1, 59, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

The plaintiff filed the presentment at issue in January, 2004. The presentment is the means by which to bring the defendant's alleged misconduct with respect to the 1995 incident before the Superior Court for a hearing. See Practice Book § 2-47. The presentment alleges, in part,[4] that in December, 1995, the defendant, who at the time was a member of the Connecticut bar, wrote a letter to then Chief Justice Ellen A. Peters, in which she stated that the conduct of three judges of the Superior Court displayed the "stark appearance of judicial corruption." The presentment further alleges that the defendant's conduct with respect to her remarks about the three judges violated rules 8.2 (a)[5] and 8.4 (4)[6] of the Rules of Professional Conduct. At a preliminary hearing on the presentment, Judge Mintz, sua sponte, raised the issue of the court's subject matter jurisdiction in light of the defendant's disbarment.[7] The court ordered the parties to brief the issue and to return to court for oral argument thereafter. After hearing the parties' arguments on March 16, 2004, Judge Mintz concluded that the court lacked subject matter jurisdiction

---

[4] Paragraphs two through six of the presentment allege four prior disciplinary actions in which the defendant had been reprimanded and one in which she had been disbarred. The remainder of the allegations of the presentment concerned the 1995 incident.

[5] Rule 8.2 of the Rules of Professional Conduct provides in relevant part: "(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office. . . ."

[6] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . . (4) Engage in conduct that is prejudicial to the administration of justice . . . ."

[7] Subject matter jurisdiction may be raised at any time by any party or sua sponte by the court. See *Beneduci* v. *Valadares*, 73 Conn. App. 795, 805, 812 A.2d 41 (2002).

because the defendant had been disbarred. The court found that there is no rule authorizing the Superior Court's continued jurisdiction over a disbarred attorney, concluded that the matter was not justiciable and dismissed the presentment. The plaintiff appealed.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission,* 76 Conn. App. 199, 203, 821 A.2d 269 (2003). "Because such a determination involves a question of law, our review is plenary." (Internal quotation marks omitted.) *Goodyear* v. *Discala,* 269 Conn. 507, 511, 849 A.2d 791 (2004). "Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Stewart-Brownstein* v. *Casey,* 53 Conn. App. 84, 88, 728 A.2d 1130 (1999).

There is a distinction between a court's jurisdiction and its statutory authority to act. See 1 Restatement (Second), Judgments § 11 (1982). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio,* 247 Conn. 724, 727–28, 724 A.2d 1084 (1999). "Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power." (Internal quotation marks omitted.) *Scott* v. *State Bar Examining Committee,* 220 Conn. 812, 817, 601 A.2d 1021 (1992).

"The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law. . . . In the exercise of its disciplinary power, the Superior Court has adopted the Code of Professional Responsibility." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 553–54, 663 A.2d 317 (1995).

Judge Mintz concluded that the court lacked subject matter jurisdiction because the issue was not justiciable, as the defendant was no longer a member of the bar. In reaching this conclusion, he relied on the definition of justiciability set forth in *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 713 A.2d 1267 (1998). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Id., 91. Judge Mintz concluded that because the defendant had been disbarred prior to the filing of the presentment, the third and fourth prongs of the justiciability rule were wanting. We conclude, however, that, although the defendant has been disbarred for conduct unrelated to the 1995 incident alleged in the presentment, the matter is capable of being adjudicated and the determination of the controversy will result in practical relief to the plaintiff.

Although the dissent contends that Judge Mintz properly dismissed the presentment because the issue is moot as there is no *legal* relief that can be granted, we note that our case law uses the terms legal and practical

relief. "Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . An issue is moot when the court can no longer grant any practical relief." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002). "[C]ourts do not decide moot questions 'disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' . . . One oft-cited case put it this way in finding mootness: 'So, as no practical benefit could follow from the determination of the questions . . . it is not incumbent upon us to decide them.' " (Citation omitted.) *State* v. *Klinger*, 50 Conn. App. 216, 222, 718 A.2d 446 (1998). We are of the mind that there is actual relief and practical benefit to be afforded both the plaintiff and the defendant by a court's determining whether the defendant's alleged conduct related to the 1995 incident was, in fact, misconduct.

General Statutes § 51-90e provides in relevant part: "(a) Any person may file a written complaint alleging *attorney misconduct*. . . ." (Emphasis added.) Practice Book § 2-47 (a) provides in relevant part: "*Presentment of attorneys for misconduct* . . . shall be made by written complaint of the statewide grievance committee . . . ." (Emphasis added.) When construing a statute, we ascertain its meaning from the text of the statute itself and *its relationship to other statutes*. General Statutes § 1-2z. The presentment here concerns an incident that occurred in 1995, alleging misconduct that occurred before the defendant was disbarred. Section 51-90e and Practice Book § 2-47 concern the miscon-

duct of attorneys. "[E]ach disciplinary action must be decided on its own particular facts in order to determine the appropriate discipline." *In re Application of Kraemer*, 411 N.W.2d 71, 74 (N.D. 1987); see also *People v. Jamrozek*, 921 P.2d 725 (Colo. 1996) (affirming recommendation for disbarment but not imposing additional discipline as respondent already disbarred). We therefore conclude that the court can adjudicate the 1995 incident to determine whether the defendant's alleged conduct was, in fact, misconduct. That determination can be made irrespective of the defendant's current status.

"[A] comprehensive disciplinary scheme has been established to safeguard the administration of justice, and [is] designed to preserve public confidence in the system and to protect the public and the court from unfit practitioners. . . . General Statutes § 51-90g and the parallel rules of practice authorize the grievance committee to act as an arm of the court in fulfilling this responsibility. . . . These rules exist within the broader framework of the relationship between attorneys and the judiciary. . . . This unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline. . . .

"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited.

. . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 554–55.

When Judge Mottolese disbarred the defendant, he ordered that she was prohibited from applying for readmission to the bar for five years, among other things. *Sullivan* v. *Monroe*, supra, Superior Court, Docket No. 370545. One who has been disbarred has the right to apply for readmission. Practice Book § 2-53; *In re Application of Koenig*, 152 Conn. 125, 131–32 n.2, 204 A.2d 33 (1964). The Superior Court may reinstate as an attorney-at-law, any person who has been disbarred. General Statutes § 51-93. "[T]he appropriate inquiry when deciding whether to grant admission to the bar is whether the applicant has *present* fitness to practice law. . . . Fitness to practice law does not remain fixed in time." (Citations omitted; emphasis in original.) *Scott* v. *State Bar Examining Committee*, supra, 220 Conn. 829.

We conclude therefore that there is practical benefit to both parties to resolve this controversy sooner rather than later. We take judicial notice of the plaintiff's argument before Judge Mintz on the motion to dismiss that all three of the judges involved in the 1995 incident are now trial judge referees. As in any case, time dims the memory of all witnesses. A resolution of the controversy also will benefit the courts and the public, the third party beneficiaries of our attorney disciplinary system. If, and when, the defendant seeks to apply for readmission to the bar, the defendant's record before the bar admission committee will be more complete if this matter is adjudicated. The issue to be decided is

whether the defendant's conduct with respect to the 1995 incident violates our code of professional conduct.

With respect to the defendant, we foresee a possible impediment to her applying for readmission to the bar if the 1995 incident remains unresolved. We cannot anticipate how the absence of a decision will be considered by the bar examining committee that would review the defendant's application for readmission. Alternatively, if the defendant is readmitted to the bar, will she immediately be faced with a presentment related to the 1995 incident? We also take issue with the dissent's position that the Superior Court can not suspend or disbar the defendant because she has been disbarred and remains so. Practice Book § 2-47 (a) does not limit the Superior Court to those two forms of discipline, as it may impose "such other discipline as the court deems appropriate. . . ." Although the imposition of certain sanctions may be moot at this time, the adjudication of the defendant's conduct has future relevance. See *Louisiana State Bar Assn.* v. *Krasnoff*, 515 So. 2d 780, 784 (La. 1987) (although no sanction imposed on disbarred attorney, determination of gravity of violation relevant if he seeks readmission). We have no way of knowing, first of all, whether the court will uphold the plaintiff's reprimand, and second, what discipline it may impose. Hypothetically, it could impose an additional period of time before the defendant may seek readmission to the bar or additional obligations the defendant must fulfill before she may reapply.

Although it is true, as the dissent points out, that the plaintiff reprimanded the defendant for the 1995 incident, the defendant appealed from the reprimand. Although the reprimand was upheld on appeal in the Superior Court, this court reversed that judgment after concluding that the defendant had been denied due process of law because she was not present at the hearing on the appeal. *Burton* v. *Statewide Grievance*

*Committee,* supra, 60 Conn. App. 699, 707. Consequently, the appropriateness of the reprimand is still in question, a fact known to our Supreme Court when it denied the defendant's writ of error. *Burton* v. *Mottolese,* supra, 267 Conn. 56 n.51. Our Supreme Court has not issued an order pursuant to its supervisory powers with respect to this court's remanding the matter to the plaintiff for further proceedings. We therefore presume that our Supreme Court intended that the order be followed.[8]

We therefore conclude that the Superior Court has jurisdiction to consider the presentment related to the defendant's conduct that occurred prior to her disbarment, as the controversy is justiciable.[9]

The judgment is reversed and the case is remanded for further proceedings.

In this opinion FOTI, J., concurred.

BISHOP, J., dissenting. My colleagues in the majority reverse the judgment of the trial court on the basis that the matter presented by the plaintiff, the statewide

___

[8] We are troubled by footnote 2 of the dissenting opinion, which states specifically that "when an attorney's disciplinary history already has been utilized as part of the justification for disbarment, the [plaintiff] may not bring a subsequent presentment based on that same history." The dissent cites no authority for its position. In our view, the defendant's disciplinary history is what it is, and it is relevant to any current or future presentments as it reflects on the defendant's ability to practice law. See A.B.A., Standards for Imposing Lawyer Sanctions (1986) standard 9.22, p. 49 (prior disciplinary offenses among factors that may be considered in aggravation).

[9] Our conclusion is consistent with the decisions of other jurisdictions brought to our attention by the plaintiff. See, e.g., *Grievance Administrator* v. *Attorney Discipline Board,* 447 Mich. 411, 413, 522 N.W.2d 868 (1994) (disciplinary board retains jurisdiction to consider misconduct committed during period of licensure by attorneys whose licenses were later revoked); *In re Sloan,* 135 App. Div. 2d 140, 142, 524 N.Y.S.2d 699 (1988) (petition not moot in view of fact that respondent will be eligible to apply for reinstatement at some future date).

grievance committee (committee), is justiciable. Because I agree with the trial court that it lacked subject matter jurisdiction, I would affirm the judgment dismissing the presentment. I believe the committee's presentment is not capable of adjudication for three reasons: (1) because the relief it seeks has already been granted, there is no practical relief the court can grant; (2) because the underlying behaviors that are set forth in the committee's presentment have already been considered in the aggregate by the trial court and the Supreme Court as aggravating factors warranting disbarment, the matter is moot; and (3) because the committee has no jurisdiction over a disbarred attorney for predisbarment misconduct, the court is powerless to adjudicate the claims set forth in the presentment.

That the defendant, Nancy Burton, had been disbarred and the order of disbarment had been affirmed by the Supreme Court before the filing of this presentment can not be disputed. See *Burton* v. *Mottolese*, 267 Conn. 1, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).[1]

When the committee presents an attorney for misconduct, the court is authorized by Practice Book § 2-47 (a) to "render a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate. . . ." Because the court in *Burton* already had taken into consideration each and every act of misconduct alleged in the presentment at hand in its disbarment of the defendant, there was no relief the court could have issued that would not have been duplicative. In dealing with this issue,

---

[1] The record reveals that the defendant was disbarred by action of the Superior Court on November 2, 2001, and that the decision of our Supreme Court affirming the defendant's disbarment was issued on December 16, 2003. See *Burton* v. *Mottolese*, supra, 267 Conn. 2.

the majority appears to equate the concept of relief with the notion of benefit.

In apparent recognition that the court could not suspend or disbar an already disbarred attorney, the majority nevertheless concludes that the matter is justiciable because a judicial response to the presentment could be beneficial to the committee should the defendant ever seek readmission to the bar. I do not share the majority's belief that the terms "relief" and "benefit" are interchangeable in this instance, nor do I believe that the presentment is justiciable merely because the committee might one day benefit from the court's second condemnation of the defendant's past acts of misconduct.

To the contrary, our decisional law instructs us that justiciability requires "(1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 91, 713 A.2d 1267 (1998). Additionally, the contingent nature of the benefit that a present adjudication could confer on the committee belies its present justiciability.

Our Supreme Court confronted a legally analogous circumstance in *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 822 A.2d 196 (2003), a case in which the plaintiff had sought a judicial declaration of the legal efficacy of a notice sent by one party to the other. Approving of the trial court's dismissal of the matter as not justiciable, the court opined: "Our resolution of this appeal begins and ends with the defendants' claim that the action is not yet ripe for adjudication. In light of the rationale of the ripeness requirement,

to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . we must be satisfied that the case before the court does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire. . . .

"Without a claim of entitlement by the defendants, there is no dispute and the trial court cannot conclude definitively that its decision will have any effect on the adversaries before it. In other words, because the plaintiff's claims were contingent on the outcome of a dispute that had not yet transpired, and indeed might never transpire, the injury was hypothetical and, therefore, the claim was not justiciable." (Citations omitted; internal quotation marks omitted.) Id., 626–27. Here, as in *Milford Power Co., LLC*, the plaintiff seeks an adjudication not for the purpose of any present discipline, but solely for the benefit such an adjudication might provide in the event the defendant seeks readmission to the bar at some future time.

Finally, on this point, the issue is not justiciable because an adjudication by the court would offer no guidance to the present conduct of the parties. As our Supreme Court observed in *Esposito* v. *Specyalski*, 268 Conn. 336, 844 A.2d 211 (2004), in finding that a trial court's ruling on a motion for summary judgment was merely advisory: "We are not compelled to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties. The second of the limitations upon the exercise of the power . . . provides that there must be an actual, bona fide and substantial question or issue in dispute, or a substantial uncertainty of legal relations which requires settlement. . . . On the basis of the underlying principle behind the ripeness requirement, we must be confident that the court is not faced with a hypothetical injury or a claim dependent upon some

event that has not and, in point of fact, may never occur." (Citation omitted; internal quotation marks omitted.) Id., 350.

The second basis on which I would affirm the court's dismissal of the presentment is mootness. Each act of attorney misconduct recited in the committee's current presentment was utilized by the trial court, and on appeal, to support the sanction of disbarment already imposed on the defendant.[2] The committee's presentment referred to six discrete acts of misconduct, each of which the trial court utilized as an aggravating factor justifying the defendant's disbarment.[3]

The presentment alleged that on December 11, 1989, the defendant was reprimanded "in connection with CV88-0295948, *Michael* v. *Burton.*" Similarly, the Supreme Court in *Burton* v. *Mottolese*, supra, 267 Conn. 1, referred to "*Michael* v. *Burton*, Superior Court, judicial district of Danbury, Docket No. CV88 295948 (1989), (*Mottolese, J.* ) Reprimand. Unfounded, outrageous allegations of misconduct by Judge Howard Moraghan and other court personnel." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 56 n.51.

The presentment next referenced a reprimand issued by the committee in the matter of *Voog* v. *Burton*, Grievance Complaint No. 90-0113. The court, in *Burton*, also

---

[2] I do not believe generally that the committee is prevented, by mootness, from listing as allegations in a presentment, acts of attorney misconduct for which the attorney already has been disciplined. To the contrary, an attorney's disciplinary history may be a significant factor in the committee's determination to seek disbarment or suspension. Rather, I believe when an attorney's disciplinary history already has been utilized as part of the justification for disbarment, the committee may not bring a subsequent presentment based on that same history. In my view, that is precisely what occurred in this instance.

[3] In *Burton* v. *Mottolese*, supra, 267 Conn. 1, the Supreme Court made specific reference to the trial court's finding that each of these incidents of misconduct constituted an aggravating factor in justification of its ultimate sanction. See id., 56 n.51.

referred to "*Voog* v. *Burton*, Docket No. CV90 0113 (1991), Reprimand. Violation of rule 3.4 (a), (c) and (f) of the Rules of Professional Conduct." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 56 n.51.

The presentment next alleged that on September 21, 2000, the committee had issued a reprimand in *Moraghan* v. *Burton*, Grievance Complaint No. 97-0338, and that the defendant's "subsequent appeal of [the] reprimand was dismissed by both the trial court and the Appellate Court. The defendant's petition for certification to the Supreme Court was denied." In *Burton*, the court referred to "*Moraghan* v. *Burton*, Docket No. CV97-0338 (2000), Reprimand. Violation of rule 8.2 (a), appeal to the Superior Court pending." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 57 n.51.[4]

The presentment next alleged that on November 16, 2000, the committee had issued a reprimand in *Fairfield Judicial District Grievance Panel* v. *Burton*, Grievance Complaint No. 98-0368, and that the defendant's appeal from this reprimand was subsequently dismissed by both the trial court and this court. Again, the *Burton* court noted this reprimand as an aggravating factor. The court noted, "*Fairfield Judicial District Grievance Panel* v. *Burton*, Docket No. CV98-0368, Reprimand. Violation of rule 3.1, appeal to Superior Court pending." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 57 n.51. Next, the presentment

---

[4] For our purposes, I think the status of an appeal from the committee's reprimand is not pertinent because the court expressly referred to the reprimand as an aggravating factor warranting disbarment. It is likely, however, that in repeating the trial court's finding of aggravating factors, our Supreme Court did not track the ultimate disposition of the defendant's appeals from those reprimands because the court treated the committee's reprimands as adequate disciplinary history for purposes of finding aggravating factors.

alleged that the defendant had been disbarred by Judge Mottolese on November 2, 2001, and that his order had been affirmed by the Supreme Court on December 16, 2003.

Finally, the presentment contained several allegations relating to a December 12, 1995 letter written by the defendant to then Chief Justice Ellen A. Peters in which she claimed that several judges had displayed the "stark appearance of judicial corruption." The committee claimed that these allegations were unfounded and that by making them, the defendant had violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. In conjunction with this presentment, the committee failed to note that the defendant already had been reprimanded by the committee for this misconduct, but that its reprimand had been overturned on appeal on procedural grounds.[5]

Notwithstanding the committee's failure to detail the procedural path of its prior response to the defendant's December 12, 1995 letter, it is clear that the *Burton* court took this incident into consideration in determining the existence of aggravating factors warranting the defendant's disbarment. The court noted: *"Fairfield Grievance Panel* v. *Burton,* CV96 0024 (1997) Reprimand. Violation of rules 8.2 (a) and 8.4 (d). This reprimand was affirmed by Judge McWeeny. *Burton* v. *Statewide Grievance Committee,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV97-057337 (September 24, 1998), reversed on procedural grounds in *Burton* v. *Statewide Grievance Committee,* 60 Conn. App. 698, 760 A.2d 1027 (2000). The complaint is currently being reheard by the statewide grievance committee." (Internal quotation marks omitted.) *Burton* v. *Mottolese,* supra, 267 Conn. 56–57 n.51.

---

[5] See *Burton* v. *Statewide Grievance Committee,* 60 Conn. App. 698, 760 A.2d 1027 (2000).

Thus, it is apparent that each instance of misconduct alleged by the committee in its presentment was considered by the trial court as an aggravating factor and noted with approval for the same purpose by the Supreme Court in affirming the defendant's disbarment. Finally, contrary to the committee's claim that a present adjudication is necessary, a final disposition of the claims against the defendant was not found by the trial court to be a necessary antecedent to her disbarment. Rather, as noted by the Supreme Court in *Burton*, in determining an appropriate judicial response to the defendant's misconduct, Judge Mottolese made reference to the American Bar Association's Standards for Imposing Lawyer Sanctions, which list "prior disciplinary offenses" as an aggravating factor and "absence of a prior disciplinary record" as a mitigating factor. (Internal quotation marks omitted.) Id., 55. I conclude, therefore, that the underlying behaviors that were set forth in the committee's presentment have already been considered by the trial court and the Supreme Court as aggravating factors warranting disbarment, and, thus, the matter is moot.

The third reason I would affirm the court's dismissal of the presentment is that I do not believe that the committee retains jurisdiction over a disbarred attorney to discipline or to make presentment against the attorney for predisbarment acts of misconduct. In reaching this conclusion, I recognize that there is scant decisional guidance on this point, and that the issue has not been faced yet in Connecticut. Nevertheless, this court is not entirely without a reasonable basis for assessing this question.

In Connecticut, the committee is a creature both of statute and of rule. See generally General Statutes § 51-90 et seq.; Practice Book § 2-33 et seq.[6] Thus, pursuant

[6] Because no branch of government has the unique authority to regulate the conduct of members of the bar, it may be argued that legislation to the same effect may run afoul of the separation of powers doctrine. Not every

to its rule-making authority, the court created the committee and set forth, by rule, its authority and manner of proceeding. In this way, the committee acts as an arm of the court in fulfilling its unique responsibility to regulate the conduct of attorneys. Pursuant to this authority, however, the committee has the authority to act in response to a violation of the Rules of Professional Conduct only in regard to attorneys who are admitted to practice before the state's courts. General Statutes § 51-84 (a) provides in pertinent part: "Attorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act." This statute is consistent with the court's inherent authority to regulate the conduct of attorneys who are officers of the court. See *State* v. *Jones*, 180 Conn. 443, 448, 429 A.2d 936 (1980), overruled in part on other grounds, *State* v. *Powell*, 186 Conn. 547, 555, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut*, 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). Because the defendant is no longer an officer of the court, however, I believe the court no longer has jurisdiction over her to seek discipline against her for acts of misconduct that purportedly occurred while she was still admitted to practice in the absence of a statute conferring such authority on the court.[7]

---

instance, however, in which both the legislative body and the judiciary have acted presents an inevitable interbranch conflict because the mere fact of an overlap between legislation and judicial rules does not, by itself, require a protective response. See, e.g., *In re Samantha C.*, 268 Conn. 614, 639, 847 A.2d 883 (2004). Also, the rules of practice "exist within the broader framework of the relationship between attorneys and the judiciary. . . . This unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554, 663 A.2d 317 (1995); see also *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 771–72, 725 A.2d 948 (1999).

[7] I believe this view is consistent with the court's statutory authority to enjoin and otherwise sanction individuals for the unauthorized practice of law. See General Statutes § 51-88. Pursuant to § 51-88, the court has jurisdic-

Recognizing that there is no Connecticut decisional law regarding whether the committee retains jurisdiction over a disbarred attorney, the committee has cited decisions in other jurisdictions to support its assertion of jurisdiction. In its brief, the committee argues that the Supreme Court of North Dakota concluded in *In re Application of Kraemer*, 411 N.W.2d 71 (N.D. 1987), that its state trial courts have subject matter jurisdiction to discipline disbarred attorneys. While a cursory reading of *In re Application of Kraemer* may appear to support the committee's position, I note that the case involved a consolidated hearing during which Kraemer sought readmission while the bar board sought further sanctions against him for predisbarment acts of misconduct that had been the subject of a formal disciplinary hearing at the time Kraemer was disbarred for unrelated criminal misconduct. Id., 72. Additionally, the opinion in *In re Application of Kraemer* does not disclose the existence of a statute similar to Connecticut's statute, limiting the court's rule-making authority to regulate the conduct of attorneys only to those who are admitted to practice in our courts. See General Statutes § 51-84.[8]

The Florida Supreme Court, in *Florida Bar v. Ross*, 732 So. 2d 1037 (Fla. 1998), found that its jurisdiction over a disbarred attorney was limited to questions regarding whether the disbarred attorney was in compliance with orders relating to his or her disbarment and to allegations that the disbarred attorney was engaged in the unauthorized practice of law after his disbarment. Id., 1040–41. In reaching its conclusion, the Florida

tion to enjoin and to exercise its contempt powers over any individual who is found guilty of the unauthorized practice of law, regardless of whether that individual is a disbarred attorney or one who has never been admitted to practice in Connecticut.

[8] The committee's jurisdiction argument, however, does appear to find support in two decisions of the Supreme Court of Colorado not cited by the committee. See *People v. Virgil*, 945 P.2d 1385 (Colo. 1997); *People v. Koransky*, 830 P.2d 490 (Colo. 1992).

Supreme Court distinguished between suspended and disbarred lawyers. Id., 1040. It found that it had continuing jurisdiction over the postdisciplinary behavior of the former group because they remained members of the Florida bar, but that it had no postdisbarment jurisdiction over the latter group, except to enforce its disbarment orders, because disbarred lawyers are, by definition, no longer members of the Florida bar. Id., 1040–42.

As in Florida, a Connecticut court's authority to regulate the conduct of attorneys is limited to those who are admitted to practice in our courts. Because the defendant no longer enjoys that status, I believe she is not subject to the jurisdiction of the court for misconduct that took place before her disbarment even though she remains subject to the contempt power of the court for any postdisbarment acts that violate the court's disbarment order.

For the reasons stated, I respectfully dissent.