## STATEWIDE GRIEVANCE COMMITTEE *v.*
## NANCY BURTON
## (SC 17510)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 25, 2006—officially released April 10, 2007

*Nancy Burton*, pro se, the appellant (defendant).

*Michael P. Bowler*, statewide bar counsel, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The sole issue in this certified appeal is whether a trial court has subject matter jurisdiction to adjudicate a presentment complaint (presentment), filed pursuant to Practice Book, 2004, § 2-47,[1] alleging

---

[1] Practice Book, 2004, § 2-47 (a) provides in relevant part: "Presentment of attorneys for misconduct, whether or not the misconduct occurred in the actual presence of the court, shall be made by written complaint of the statewide grievance committee or a reviewing committee. Service of the complaint shall be made as in civil actions. . . . [A] hearing on the merits of the complaint shall be held within sixty days of the date the complaint was filed with the court. . . . After such hearing the court shall render a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate. This may include conditions to be fulfilled by the attorney before he or she may apply for readmission or reinstatement. . . ."

professional misconduct by an attorney who already has been disbarred from the practice of law for unrelated misconduct that occurred subsequent to the events alleged in the presentment. The defendant, Nancy Burton, appeals, upon our grant of certification, from the judgment of the Appellate Court reversing the judgment of the trial court dismissing a complaint brought by the plaintiff, the statewide grievance committee, against the defendant for alleged professional misconduct in 1995.[2] The trial court determined that it did not have subject matter jurisdiction to consider the presentment because the defendant had been disbarred, and, therefore, the issue raised was not justiciable. On appeal, the defendant claims that the Appellate Court improperly determined that the trial court had subject matter jurisdiction over the presentment. We disagree, and, accordingly, affirm the judgment of the Appellate Court.

In January, 2004, the plaintiff filed the presentment that forms the basis for this appeal. The presentment is largely based on an incident that occurred in 1995, which was the subject of a prior appeal to the Appellate Court. See *Burton* v. *Statewide Grievance Committee*, 60 Conn. App. 698, 760 A.2d 1027 (2000); see also *Fairfield Grievance Panel* v. *Burton*, CV96 0024 (1997). In that appeal; see *Burton* v. *Statewide Grievance Committee*, supra, 698, 707; the Appellate Court reversed the decision of the trial court affirming the plaintiff's 1997 decision to reprimand the defendant for violating

---

[2] We granted the plaintiff's petition for certification limited to the following question: "Did the Appellate Court properly conclude that the trial court had subject matter jurisdiction over the plaintiff's presentment complaint?" *Statewide Grievance Committee* v. *Burton*, 276 Conn. 901, 884 A.2d 1026 (2005).

rules 8.2 (a)[3] and 8.4 (4)[4] of the Rules of Professional Conduct. The Appellate Court remanded the case to the trial court with orders to reverse the judgment dismissing the plaintiff's appeal and to remand the matter to the plaintiff for further proceedings. *Burton* v. *Statewide Grievance Committee*, supra, 707. The plaintiff maintains in its brief that after it held the new hearing, it decided to file the presentment at issue in this appeal, rather than issue a reprimand. See Practice Book § 2-35 (e).

The following facts, as alleged in the presentment, are relevant to our resolution of this appeal. In December, 1995, the defendant wrote a letter to the then chief justice of the Connecticut Supreme Court[5] accusing

---

[3] Rule 8.2 (a) of the Rules of Professional Conduct provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

[4] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(4) Engage in conduct that is prejudicial to the administration of justice . . . ."

[5] The facts concerning the events at issue in 1995 are set forth in *Burton* v. *Statewide Grievance Committee*, supra, 60 Conn. App. 698. In February, 1996, the chief justice informed the defendant by letter that the Supreme Court had reviewed the allegations in her letter and had decided not to conduct an investigation. Thereafter, two of the accused judges filed separate grievance complaints against the defendant, claiming that the allegations made against them were false. The plaintiff sent the complaints to a grievance panel; see Practice Book § 32; which determined that there was probable cause to find the defendant in violation of rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct and referred the matter to a reviewing committee for a hearing. *Burton* v. *Statewide Grievance Committee*, supra, 701. The defendant was unable to attend the hearing, however, because she was involved in a trial. Following the hearing, held in the defendant's absence, the reviewing committee prepared a proposed decision finding that the defendant's allegations against the judges were untrue. Id., 702–703. The plaintiff adopted the proposed decision of the reviewing committee and reprimanded the defendant. The defendant appealed to the trial court from the plaintiff's decision, claiming that, because the plaintiff had not granted her request for a continuance and rescheduled the hearing so that she could attend, she wrongfully had been deprived of her right to a hearing on the

three Superior Court judges of conduct displaying " 'the stark appearance of judicial corruption.' " Although the defendant claimed that she had " 'witnesses, documentation and transcripts' " to support her allegations, the only evidence she produced was her own affidavit. The presentment thus alleges that the defendant's allegations were false and violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct.

The presentment further alleges that in November, 2001, the trial court disbarred the defendant for unrelated professional misconduct that occurred after the events in 1995. See *Sullivan* v. *Monroe*, Superior Court, judicial district of Fairfield, Docket No. 370545 (November 2, 2001). The defendant filed a writ of error to this court to contest her disbarment. We dismissed the writ of error, thereby upholding the disbarment. See *Burton* v. *Mottolese*, 267 Conn. 1, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). In *Sullivan*, the trial court had prohibited the defendant from applying for readmission to the bar for a period of five years. *Sullivan* v. *Monroe*, supra, Superior Court, Docket No. 370545.

In addition to the defendant's disbarment and alleged misconduct in 1995, the presentment also refers to four other incidents for which the defendant was reprimanded by the plaintiff, and claims that the defendant "has been guilty of misconduct, involving her character, integrity, and professional standing . . . ."

At the preliminary hearing on the presentment, the trial court, sua sponte, raised the issue of subject matter jurisdiction. The parties briefed and argued the matter

complaint, to confront and cross-examine her accusers and to present evidence. The trial court rendered a judgment of dismissal and the defendant appealed. As noted previously, the Appellate Court reversed the judgment of dismissal on the ground that the defendant had been deprived of her due process rights and remanded the case for further proceedings. Id., 707.

and, in an oral decision, the court determined that it did not have subject matter jurisdiction over the presentment because the issue raised therein was not justiciable in light of the defendant's disbarment. The court, therefore, dismissed the presentment.

On appeal to the Appellate Court, the plaintiff claimed that the trial court had jurisdiction to consider the presentment. The Appellate Court agreed and concluded that the matter was justiciable, even though the defendant had been disbarred for subsequent unrelated professional misconduct, because it was capable of being adjudicated and a determination of the controversy could result in practical relief to the plaintiff. See *Statewide Grievance Committee* v. *Burton*, 88 Conn. App. 523, 532–33, 871 A.2d 380 (2005). Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the matter for further proceedings. Id., 533. The defendant now appeals from that judgment, claiming that the trial court lacked subject matter jurisdiction to consider the presentment because the issue of her alleged misconduct is not justiciable in light of her disbarment.

Our standard of review is well established. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532–33, 911 A.2d 712 (2006). Similarly, an issue regarding justiciability implicates this court's subject matter jurisdiction and raises a question of law over which our review is plenary. *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 568–69, 858 A.2d 709 (2004).

We begin by noting that subject matter jurisdiction and justiciability are closely related concepts. "Subject

matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). Justiciability involves the authority of the court to resolve *actual* controversies. *Office of the Governor* v. *Select Committee of Inquiry*, supra, 271 Conn. 568. " 'Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable.' *State* v. *Nardini*, 187 Conn. 109, 111, 445 A.2d 304 (1982). 'Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant.' . . . *Seymour* v. *Region One Board of Education*, 261 Conn. 475, 481, 803 A.2d 318 (2002). As we have recognized, justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine . . . . *Esposito* v. *Specyalski*, 268 Conn. 336, 346–48, 844 A.2d 211 (2004)." *Office of the Governor* v. *Select Committee of Inquiry*, supra, 568–69. Consequently, a court may have subject matter jurisdiction over certain types of controversies in general, but may not have jurisdiction in any given case because the issue is not justiciable.

In the present case, the trial court recognized that it possessed the requisite authority to adjudicate disciplinary matters involving attorneys. See *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 553–54, 663 A.2d 317 (1995) ("The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to

disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law. . . . In the exercise of its disciplinary power, the Superior Court has adopted the Code of Professional Responsibility." [Citations omitted; internal quotation marks omitted.]); *Scott* v. *State Bar Examining Committee*, 220 Conn. 812, 817, 601 A.2d 1021 (1992) ("[f]ixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power" [internal quotation marks omitted]). The trial court determined, however, that the third prong of the justiciability doctrine had not been satisfied because the court did not have authority to adjudicate a matter involving a disbarred attorney. It also concluded that the fourth prong had not been satisfied because the defendant's disbarment meant that a judicial determination of the controversy could not result in any practical relief to the plaintiff. We disagree.

With respect to the third prong, we set forth the applicable statutory provisions and rules of practice. General Statutes § 51-80 provides in relevant part: "The Superior Court may admit and cause to be sworn as attorneys such persons as are qualified therefor, in accordance with the rules established by the judges of the Superior Court. . . ." General Statutes § 51-84 (a) provides in relevant part: "Attorneys admitted by the Superior Court . . . shall be subject to the rules and orders of the courts before which they act." General Statutes § 51-90e (a) provides in relevant part: "Any person may file a written complaint alleging attorney misconduct. . . ." Practice Book, 2004, § 2-47 (a) provides in relevant part: "Presentment of attorneys for misconduct . . . shall be made by written complaint of the statewide grievance committee . . . ."

It is clear from the language of the foregoing provisions that allegations of professional misconduct must

involve the behavior of a practicing attorney. Furthermore, it is undisputed that the events that form the basis of the plaintiff's allegations occurred when the defendant was a practicing attorney, *prior* to her disbarment for other reasons. There are no rules that prevent the court from adjudicating such a complaint during a period of disbarment. Accordingly, we conclude that the defendant's present status is irrelevant and that the allegations in the presentment are capable of being adjudicated.

This conclusion is consistent with the law of other jurisdictions. In *In re Application of Kraemer*, 411 N.W.2d 71, 73 (N.D. 1987), the Supreme Court of North Dakota found no impediment to investigating charges of predisbarment misconduct in the absence of a specific rule on the matter. After noting that (1) the attorney in question held an unrevoked certificate of admission when the predisbarment misconduct occurred, (2) nothing in the North Dakota Rules of Disciplinary Procedure restricted the timing of such an investigation, (3) the court would have had jurisdiction over the attorney's misconduct had he not been disbarred subsequently for other misconduct, and (4) the court had authority to investigate a disbarred attorney's postdisbarment conduct, the court determined that it would be "anomalous to suggest that [the court had] the authority and obligation to investigate a disbarred attorney's postdisbarment conduct but not his pre-disbarment conduct." Id.

The defendant argues that *In re Application of Kraemer* is inapplicable because it involved a consolidated hearing during which the attorney sought readmission to the bar and the disciplinary board sought further sanctions against him for predisbarment misconduct. We disagree. The court specifically concluded that disciplinary proceedings should not be deferred until the initiation of reinstatement proceedings. *In re*

*Application of Kraemer,* supra, 411 N.W.2d 73. The court stated: "The objective of disciplinary proceedings is to determine, in the public interest, if the attorney should be permitted to practice law. *Disciplinary Board of Supreme Court* v. *O'Neil,* 326 N.W.2d 879 (N.D. 1982). Permitting the investigation of both post and pre-disbarment conduct is consistent with that purpose. There is also the interrelated objective of instilling public confidence in the legal profession's ability to regulate and discipline its members. We believe these objectives, coupled with our statutory authority to investigate complaints whenever they are filed, authorize the investigation and resolution of all complaints of attorney misconduct, including a disbarred attorney's pre-disbarment conduct, *as they arise. To defer resolution of a complaint alleging pre-disbarment misconduct until the initiation of reinstatement proceedings would hamper the availability and recollections of witnesses, restrict or defeat restitution, and impair fairness to the respondent and the complainant."* (Emphasis added.) *In re Application of Kraemer,* supra, 73.

The defendant also argues that *In re Application of Kraemer* is distinguishable because North Dakota does not have a statute like the one in Connecticut that limits the court's rule-making authority to the regulation of conduct by attorneys admitted to the bar. This claim has no merit. *In re Application of Kraemer* cites two rules directly relating to this issue, namely, rule 1 (b) of the North Dakota Rules of Disciplinary Procedure, which "defines a 'complaint' as an *allegation that a person holding an unrevoked certificate of admission to the bar* has committed misconduct, and [rule] 8 [which] authorizes the [d]isciplinary [b]oard to investigate 'complaints.' " (Emphasis added.) Id. That the cited provisions are rules rather than statutes is immaterial in light of the fact that they serve the same function of regulating the conduct of attorneys *admitted to the bar.*

Furthermore, as *In re Application of Kraemer* aptly notes, a point far more relevant than the source of the rules is that nothing in the North Dakota rules restricts the timing of the disciplinary board's investigation of a complaint. This is also the case in Connecticut.

Moreover, North Dakota is not the only other jurisdiction to conclude that the court has authority to adjudicate predisbarment conduct during the period of disbarment. The Supreme Court of Louisiana considered the propriety of initiating disciplinary proceedings against disbarred attorneys for misconduct that had occurred when they were members of the Louisiana bar and concluded that the court had jurisdiction over such matters. See *Louisiana State Bar Assn.* v. *Krasnoff*, 502 So. 2d 1018, 1019 (La. 1987). The court concluded that "our exclusive jurisdiction in disciplinary matters allows us to hear and act upon all complaints of misconduct alleged to have occurred while an attorney was a member of the bar and regardless of whether or not the attorney has already been disbarred. . . . The [c]ourt's jurisdiction over a disbarred attorney is continuing as evidenced by our decisional authority to readmit or not to readmit a disbarred attorney to the practice of law. . . .

"We believe it is proper . . . to go forward with disciplinary proceedings regardless of the stage of development, when the misconduct occurred prior to the finality of a disbarment order. It would not be appropriate for such matters to be held in abeyance and referred to any readmission application the disbarred attorney might file. Delay in such matters would prejudice the availability of witnesses, restrict or defeat appropriate restitution, and impede fairness to the involved respondent and the complainant. . . . Finally, a failure . . . to go forward with disciplinary proceedings regardless of the state of development, or a failure by this [c]ourt to exercise its jurisdiction and

act on such matters, would inevitably damage the integrity of the legal profession and lead to a loss of respect in the minds of our citizens. Judicial economy and use of the [disciplinary] [c]ommittee's time and resources are policy considerations which must be subordinated to the need for prompt response to complaints of professional misconduct." (Citation omitted.) Id., 1020–21; see also *People* v. *Jamrozek*, 921 P.2d 725, 725–26 (Colo. 1996) ("[e]ven though [the respondent is] now disbarred, he remains subject to the jurisdiction of this court and its grievance committee for his failure to comply with the Code of Professional Responsibility and the Rules of Professional Conduct while he practiced law"); *Grievance Administrator* v. *Attorney Discipline Board*, 447 Mich. 411, 412–13, 522 N.W.2d 868 (1994) (court rules continue to govern conduct of attorney who committed misconduct prior to revocation of license). We endorse this reasoning.

The defendant relies on *Florida Bar* v. *Ross*, 732 So. 2d 1037, 1040–41 (Fla. 1998), in further contending that other states, like Connecticut, whose authority to regulate the conduct of attorneys is restricted to those admitted to practice, have determined that the court's jurisdiction over a disbarred attorney is "limited" to whether the disbarred attorney was in compliance with orders concerning the disbarment or to whether the attorney was engaged in the unauthorized practice of law following the disbarment. The defendant misconstrues the Florida opinion.

The issue before the Florida Supreme Court in *Florida Bar* v. *Ross*, supra, 732 So. 2d 1038–39 and n.1, was whether it had jurisdiction to review the ethical violations of an attorney who had been suspended from the practice of law four years earlier for unrelated misconduct and who had not been reinstated. The court, in attempting to clarify the basis of its "continuing disciplinary jurisdiction" over attorneys who already were

under suspension, attorneys who had been disbarred and attorneys who had resigned in the face of disciplinary charges, explained that attorneys in the latter two categories were no longer "members" of the Florida bar. Id., 1040. The court further explained that attorneys in all three categories, under the rules regulating the Florida bar, nevertheless were subject to the jurisdiction of the court if they had engaged in the unlicensed practice of law following their earlier discipline. Id. The court went on to declare that it "consistently [had] imposed additional discipline upon already disciplined attorneys for engaging in the unauthorized practice of law during their existing discipline." Id., 1041. The court did not address the issue raised in the present case of whether it had jurisdiction to consider predisbarment misconduct during the period of disbarment. Consequently, the opinion sheds no light on that issue and cannot be said to stand for the proposition that the court's jurisdiction during the disbarment is "limited" to questions concerning the disbarred attorney's unauthorized practice of law.

Turning to the issue of whether determination of the present controversy could result in any practical relief to the plaintiff, we conclude that it may, and, consequently, the fourth prong of the justiciability doctrine also is satisfied. Whether the plaintiff may be afforded practical relief raises the question of mootness. "The test for determining mootness is whether a judgment, if rendered, would have any practical legal effect upon an existing controversy. Thus, the central question in a mootness problem is whether a change in the circumstances that prevailed at the beginning of the litigation has forestalled the prospect for meaningful, practical, or effective relief. The mere fact that there are difficulties in formulating a remedy in an otherwise living case does not evidence the absence of a case or controversy, nor will a case be considered moot where, although

the court cannot grant the specific relief originally requested by the plaintiff, the plaintiff still has a stake in the outcome of the proceedings for which effective relief can be provided." 5 Am. Jur. 2d 321–22, Appellate Review § 642 (1995).

On the other hand, "it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125–26, 836 A.2d 414 (2003). In other words, "where the question presented is purely academic, we must refuse to entertain the appeal." (Internal quotation marks omitted.) *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 250, 440 A.2d 310 (1982).

In the present case, the question is not purely academic. The defendant has not been disbarred for life, but for a specified period of time. Accordingly, she may seek readmission to the bar when her term of disbarment expires; see Practice Book § 2-53; and adjudication of her predisbarment conduct will provide the plaintiff with a more complete and accurate record of her background and character if she applies for readmission. See *In re Sloan*, 135 App. Div. 2d 140, 142, 524 N.Y.S.2d 699 (1988) (postdisbarment disciplinary proceedings not deemed moot "[i]n view of the fact that respondent will, at some future date, be eligible to apply for reinstatement").

We also agree with other jurisdictions that have concluded that, if the court is required to suspend consider-

ation of such matters until the disbarred attorney seeks readmission, witnesses no longer may be available or their recollections may be dimmed by the passage of time. See *In re Application of Kraemer*, supra, 411 N.W.2d 73; *Louisiana State Bar Assn.* v. *Krasnoff*, supra, 502 So. 2d 1019. Moreover, in cases in which the remedy for an attorney's misconduct is restitution; see *People* v. *Jamrozek*, supra, 921 P.2d 728; the availability of restitution may be restricted or defeated altogether by a delay in the proceedings, thus interfering with the effective administration of justice. See *In re Application of Kraemer*, supra, 73; *Louisiana State Bar Assn.* v. *Krasnoff*, supra, 1019. Practice Book § 2-47 (a) also provides that, following a hearing on the presentment of an attorney, "the court shall render a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or *such other discipline as the court deems appropriate.*" (Emphasis added.) "[S]uch other discipline" might include extending the disbarment period or requiring that other conditions be fulfilled prior to seeking readmission. See Practice Book § 2-47 (a). For example, the Louisiana Supreme Court further penalized a disbarred attorney by extending his disbarment for additional, unrelated predisbarment misconduct. See *Louisiana State Bar Assn.* v. *Krasnoff*, supra, 1023. Finally, the opportunity to impose additional disciplinary orders upon the defendant will serve the plaintiff's interest of protecting the public from unfit practitioners. We therefore conclude that the defendant's present disbarment, which is not permanent in nature, poses no barrier to granting the plaintiff practical relief and, accordingly, the fourth prong of the justiciability doctrine is satisfied.

To the extent that the defendant argues on the basis of *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 822 A.2d 196 (2003), that the foregoing con-

siderations are merely "benefit[s]," rather than the practical relief necessary to overcome charges of mootness, we disagree. In *Milford Power Co., LLC*, the plaintiff power company, which had entered into a contract with the defendants for engineering, procurement and construction services relating to the construction of a power plant, sought a declaratory judgment to determine whether the defendants properly had invoked the force majeure clause in the contract following an accident at the construction site that resulted in an investigation and a one month halt in activities. Id., 618–19. The defendants moved to dismiss the action on the ground that the notice of the force majeure event did not include a claim for additional time or money and, accordingly, there was no justiciable controversy. Id., 621. Arguing that the action was premature because it depended on events that had not yet transpired, they claimed that no practical relief could be afforded to the plaintiff. Id. The plaintiff countered that the controversy was ripe because it anticipated that the defendants would claim that they were entitled to an extension of time and thus would object to the plaintiff's assessment of liquidated damages. Id. The trial court denied the motion to dismiss and concluded that the dispute was justiciable because the notice letter could lead to a future dispute as to whether the plaintiff was entitled to liquidated damages for delays stemming from the incident and the subsequent investigation. Id. On appeal, we concluded that the controversy was not justiciable and that the trial court improperly had denied the motion to dismiss because the plaintiff had not sought the declaratory judgment to settle an existing controversy, but to avoid one in the future. Id., 627–29.

Contrary to the defendant's claim, the present dispute cannot be deemed "legally analogous" to the dispute in *Milford Power Co., LLC*, because the plaintiff in this case alleges misconduct arising from events in 1995, when the defendant was a practicing attorney, whereas

no allegations had yet been made by either of the parties when the plaintiff sought a declaratory judgment in *Milford Power Co., LLC*. The defendant thus improperly analogizes the anticipated dispute in *Milford Power Co., LLC*, to the practical relief sought by the plaintiff in the present case, which the court may impose during the period of disbarment and which consists, in part, of the immediate opportunity to order appropriate additional sanctions for the defendant's alleged misconduct, thus fulfilling the continuing obligation of the court to ensure that only fit practitioners be admitted to the bar.

The defendant argues that the issue before this court is moot for the additional reason that we considered the underlying events in this matter as an aggravating factor warranting her disbarment for another instance of misconduct in *Burton* v. *Mottolese*, supra, 267 Conn. 56–58. We disagree.

In *Burton* v. *Mottolese*, supra, 267 Conn. 2–3, the defendant brought a writ of error claiming that the trial court improperly had concluded in *Sullivan* v. *Monroe*, supra, Superior Court, Docket No. 370545, that she had violated several Rules of Professional Conduct and that the imposition of the sanction of disbarment violated her due process rights. In *Sullivan*, the trial court included the same instances of misconduct alleged in this case in a list of "documented instances of sanctioned misconduct" that it had considered to be aggravating factors.[6] In referring to the reprimand issued in *Fairfield Grievance Panel* v. *Burton*, CV96 0024 (1997),

[6] In addition to nine disciplinary offenses, the court also considered as aggravating factors: (1) dishonest or selfish motive; (2) a pattern of misconduct; (3) the fact that the defendant's prior documented instances of sanctioned misconduct had affected several hundred plaintiffs; (4) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (5) submission of false evidence, false statements or other deceptive practices during the disciplinary process; (6) refusal to acknowledge the wrongful nature of her conduct; (7) substantial experience in the practice of law; and (8) indifference to making restitution. See *Sullivan* v. *Monroe*, supra, Superior Court, Docket No. 370545.

which stemmed from the defendant's conduct in 1995, the court stated: "Reprimand. Violation of rules 8.2 (a) and 8.4 (d). This reprimand was affirmed by Judge McWeeny. *Burton* v. *Statewide Grievance Committee*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV97-057337 (September 24, 1998), reversed on procedural grounds in *Burton* v. *Statewide Grievance Committee*, [supra] 60 Conn. App. 698 . . . . The complaint is currently being reheard by the statewide grievance committee." *Sullivan* v. *Monroe*, supra, Superior Court, Docket No. 370545; see also *Burton* v. *Mottolese*, supra, 56–57 n.51.

The defendant's argument must fail because the trial court in *Sullivan* specifically noted that the reprimand issued in *Fairfield Grievance Panel* had been reversed on appeal and that the case was being reheard by the plaintiff. Thus, because the trial court in *Sullivan* noted and correctly detailed the procedural history in *Fairfield Grievance Panel*, we can assume that the court also recognized that the matter would be retried, and, therefore, that the alleged misconduct relating to the 1995 events had not been fully litigated.

In addition, the present case cannot be deemed moot on the ground that *Sullivan* cited the 1995 events as an aggravating factor because the court's reference to those events did not constitute a sanction, but was intended to justify an increase in the degree of discipline imposed for the completely different offense adjudicated in the disbarment proceeding. Indeed, if we were to adopt the defendant's logic, a prior offense never could be recognized as an aggravating factor in a subsequent proceeding because doing so would constitute additional punishment. Accordingly, if the trial court ultimately determines upon remand that the 1995 events rise to the level of misconduct, the defendant may be disciplined at that time, she will not have been punished twice, and the court's reliance in *Sullivan* on the 1995

events as an aggravating factor will have been vindicated. If, on the other hand, the trial court determines that the defendant's actions in 1995 did not rise to the level of misconduct, the court's reliance on the 1995 events as an aggravating factor in the disbarment decision may be viewed in retrospect as improper. The defendant, however, waived her right to appeal from the disbarment decision for improper use of the 1995 events as an aggravant because, to our knowledge, she has never claimed that the disbarment decision improperly was based on those events. For all of the foregoing reasons, we conclude that the trial court had subject matter jurisdiction over the presentment and that the third and fourth prongs of the justiciability doctrine have been satisfied because an actual controversy exists between the parties and the resolution of the controversy may result in meaningful, practical and effective relief to the plaintiff.[7]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[7] We do not consider the defendant's claims of res judicata and collateral estoppel in connection with this court's affirmance of the disbarment order in *Burton* v. *Mottolese,* supra, 267 Conn. 1, in which she argues that the presentment alleges the same misconduct that this court recognized as an aggravating factor in the disbarment case, because the defendant raises this claim for the first time in her reply brief and "[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief."

(Internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997).