******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHIEF DISCIPLINARY COUNSEL *v.*
ZBIGNIEW S. ROZBICKI
(AC 35633)

Alvord, Sheldon and Harper, Js.

*Argued February 4—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of Litchfield, Hon. Thomas F. Upson, judge trial referee.)

*Zbigniew S. Rozbicki*, self-represented, the appellant (defendant).

*Suzanne B. Sutton*, first assistant chief disciplinary counsel, with whom was *Beth Baldwin*, assistant chief disciplinary counsel, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this presentment filed by the plaintiff, Chief Disciplinary Counsel, alleging misconduct by the defendant, Attorney Zbigniew S. Rozbicki, the defendant appeals from the judgment of the trial court concluding that he violated various rules of professional conduct in the course of his administration of the estate of Kathleen Gisselbrecht (decedent), and ordering, inter alia, that he be suspended from the practice of law for a period of two years. On appeal, the defendant claims that (1) the Statewide Grievance Committee (grievance committee) failed to exhaust its administrative remedies, and thus the plaintiff lacked standing to bring, and the court lacked jurisdiction to hear, this presentment; (2) the court erred in failing to permit him to introduce evidence concerning his claims of res judicata and collateral estoppel (preclusion claims) at trial on the ground that the court had already ruled on those issues on his earlier motion for summary judgment; (3) the court deprived him of his constitutional right to due process when it denied all of his requests for discovery; (4) the trial judge did not have authority, as a judge trial referee, to preside over a presentment; and (5) the court abused its discretion in ordering his suspension from the practice of law for a period of two years.

A recitation of the tortuous factual background of this case is not necessary to our resolution of the claims on appeal. We thus set forth the following truncated version of largely undisputed facts, as found by the trial court, that have brought this matter before us. The defendant was the longtime employer and friend of the decedent. After the decedent's passing on April 17, 2007, the defendant was appointed executor of her estate. The decedent had an Allstate life insurance policy (policy) in the amount of $100,000, which named as beneficiaries her sister, Ann Marie Roszas, and her brother, Edward Gisselbrecht.[1] In her will, the decedent directed that the proceeds from the policy be used to pay off the mortgage on her home, and to pay $20,000 to the defendant as reimbursement for funds he had advanced to her for the purchase of her home. In July, 2007, the defendant forwarded to Roszas and Gisselbrecht the life insurance proceeds. In October, 2007, the decedent's home was sold, and the outstanding mortgage on the property was paid from the proceeds of that sale. The defendant was not reimbursed the $20,000 that he had loaned the decedent. Following a series of increasingly hostile and disparaging correspondence among the parties, the defendant commenced litigation against Roszas and Gisselbrecht seeking the recovery of the life insurance proceeds. The defendant paid the $20,000 to himself from the estate and also filed a claim for attorneys' fees incurred in a personal injury case in which he represented the decedent prior to her death.

On January 23, 2009, Roszas filed a grievance com-

plaint alleging misconduct by the defendant in his administration of the decedent's estate. The local panel of the grievance committee (grievance panel) found probable cause for the violation by the defendant of various rules of professional conduct, and thus referred the case to the grievance committee. Following an evidentiary hearing, the grievance committee issued a written decision dated September 4, 2009, dismissing that complaint on the ground that Roszas had not presented clear and convincing evidence of an ethical violation by the defendant.

On March 23, 2009, Gisselbrecht filed a grievance complaint also alleging misconduct by the defendant in his administration of the decedent's estate. On May 6, 2010, Christina Falzarano, the decedent's niece, also filed a grievance complaint alleging misconduct by the defendant. Following a finding of probable cause by the grievance panel, the grievance committee held a consolidated evidentiary hearing on those two complaints. On November 23, 2010, the grievance committee issued a written decision wherein it found by clear and convincing evidence that the defendant had engaged in unethical conduct. Specifically, it found that the conduct of the defendant had constituted: a lack of diligence in violation of rule 1.3 of the Rules of Professional Conduct; a conflict of interest in violation of rule 1.7 of the Rules of Professional Conduct; and conduct prejudicial to the administration of justice in violation of rule 8.4 (4) of the Rules of Professional Conduct. On the basis of those findings, the grievance committee directed the plaintiff to bring a presentment against the defendant. The plaintiff did so on May 3, 2011.

Following a lengthy motions history, which will be discussed more fully herein as necessary, the court held an evidentiary hearing, after which the parties filed posttrial briefs with the court. On March 8, 2013, the court issued a memorandum of decision in which it found by clear and convincing evidence that the defendant had violated the following Rules of Professional Conduct: rule 1.7 (a) (2), by "plac[ing] his own interest in securing his personal claims ahead of his fiduciary responsibilities to the estate and the beneficiaries; rule 1.3, by failing to diligently represent the interests of the estate, which still remained unresolved almost six years after the death of the decedent; rules 1.2 (a) and 1.4 (a), by failing to communicate with the beneficiaries of the estate as to his representation after the beneficiaries objected to the defendant's personal claim against the estate; rules 1.4 (b) and 2.1, by failing to exercise independent professional judgment and failing to render candid advice to the beneficiaries concerning the options available to administer the estate; rule 4.4 (a), by filing a frivolous lawsuit against two beneficiaries of the estate and by sending harassing correspondence to the beneficiaries and to the attorney hired by the beneficiaries; and rule 8.4, by committing numerous

acts that were prejudicial to the administration of justice. Accordingly, the court suspended the defendant from the practice of law for two years and required that, prior to reinstatement, he pass the Multistate Professional Responsibility Examination. The defendant thereafter filed a motion for a new trial, which the court denied, and this appeal followed.[2] Additional facts will be set forth as necessary.

Before we address the defendant's specific claims on appeal, we set forth the overarching principles governing the relationship between the Superior Court and members of the bar. "The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law. . . . In the exercise of its disciplinary power, the Superior Court has adopted the Code of Professional Responsibility [now the Rules of Professional Conduct]." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 553–54, 663 A.2d 317 (1995).

"Disciplinary proceedings are for the purpose of preserving the courts from the official ministration of persons unfit to practice in them." (Internal quotation marks omitted.) *Ex Parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883). "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court. . . . Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. . . . [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. . . . In [disciplinary] proceedings . . . therefore, the attorney's relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238–39, 558 A.2d 986 (1989), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992).

"[T]he clearly erroneous standard . . . is the preferable standard of review in attorney grievance appeals." *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 613, 931 A.2d 319, cert. denied, 284

Conn. 929, 934 A.2d 244 (2007). "The clearly erroneous standard of review provides that [a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) Id., 612. With these principles in mind, we turn to the claims on appeal.

I

We begin with defendant's challenge of the trial court's subject matter jurisdiction over this presentment.[3] The defendant claims that the grievance committee's failure to exhaust its administrative remedies and the plaintiff's lack of standing deprived the court of subject matter jurisdiction over the presentment. Although the defendant's argument is difficult to follow, he appears to be claiming that the November 23, 2010 decision of the grievance committee was a proposed decision by a reviewing committee that was not reviewed by the grievance committee, and, thus that the grievance committee had not issued a final decision on the reviewing committee's proposed decision. The defendant argues that that failure by the grievance committee to review the proposed decision of the reviewing committee constituted a failure by the grievance committee to exhaust its administrative remedies and, further, that because there was no final decision rendered by the grievance committee, the plaintiff did not have standing to file the presentment, and, therefore, the court did not have subject matter jurisdiction. We are unpersuaded.

The issue of subject matter jurisdiction is a question of law over which our review is plenary. *Scalise* v. *East Greyrock, LLC*, 148 Conn. App. 176, 180, 85 A.3d 7 (2014). "There are three possible sources for the authority of courts to sanction counsel and pro se parties. These are inherent power, statutory power, and the power conferred by published rules of the court." *In the Matter of Presnick*, 19 Conn. App. 340, 347, 563 A.2d 299, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). "That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs as to achieve an orderly and expeditious disposition of cases." Id.

The defendant's claim is based upon an interpretation of the applicable statutes, without regard to our rules of practice, which have been amended. As the plaintiff aptly points out, those statutes, as previously noted, must be read in harmony with the applicable rules of practice. Prior to October 1, 1997, reviewing committees issued only proposed decisions, upon which the parties were allowed to comment in writing prior to

the grievance committee's review and issuance of a final decision. For grievance complaints filed on or after October 1, 1997, however, reviewing committees issue final decisions, subject to a defendant's right to request review by the grievance committee. Here, therefore, the reviewing committee's decision directing the plaintiff to file this presentment was a final decision. The defendant had the opportunity to request review of that decision, but in the absence of such a request by the defendant, there is no additional administrative remedy of which the plaintiff was required to avail itself prior to the commencement of this presentment. Accordingly, the plaintiff did not lack standing, and the court did not lack subject matter jurisdiction, in this matter.

## II

The defendant next claims that the court erred in precluding the introduction of the Roszas complaint into evidence and refusing to permit him to relitigate his preclusion claims on the ground that those issues had already been decided by the court.[4] We disagree.

On March 13, 2012, the defendant filed a motion for summary judgment on the ground,[5] inter alia, that the allegations of misconduct giving rise to this presentment are duplicative of those allegations that were heard and dismissed by the grievance committee in the Roszas proceeding, and thus that the claims herein should be precluded as duplicative.[6] By memorandum of decision issued on April 2, 2012, the court denied the motion for summary judgment on the ground that there is neither identity nor privity between Roszas, Gisselbrecht and Falzarano, which is required for preclusion. The defendant did not challenge that ruling on appeal.[7] The defendant thereafter filed an answer and special defenses claiming, inter alia, res judicata and collateral estoppel.[8]

At trial, the defendant attempted to introduce into evidence the complaint that Roszas had filed with the grievance committee. The plaintiff objected to its admission, and the court sustained the objection on the ground that it was irrelevant because the preclusion claims had already been considered and rejected by the court on summary judgment. The defendant alluded to additional evidence that would bear on the court's jurisdiction, which, according to the trial transcript, piqued the court's interest, but he never expounded upon that reference, nor did he attempt to introduce any evidence bearing on it.

In his posttrial brief, the defendant again raised his preclusion claims, arguing that "the court is bound to reconsider the res judicata and collateral estoppel issues because these issues strike at the heart of subject matter jurisdiction." He contended that "[t]he three successive grievance complaints, filed by the sister, brother and daughter of the same family within three months,

which contained essentially the same allegations, is vexatious by its very nature. The dismissal of the first grievance by the Roszas committee was not only binding on the subcommittee which determined the Gisselbrecht and Falzarano complaints, but also on the Superior Court on subject matter jurisdiction grounds."

In its March 8, 2013, memorandum of decision, the court again declined to reconsider the defendant's preclusion claims on the ground that they had been addressed on the merits in its memorandum of decision denying the defendant's motion for summary judgment.

Now, on appeal, the defendant claims that the court improperly refused to reconsider his preclusion claims, contending that those claims implicated the court's subject matter jurisdiction and that "[t]he content and factual basis of the Roszas grievance was not only relevant, but indispensable for the court to make [a] comparison and findings of whether the grievances at bar were duplicat[ive] and thus barred under the jurisdictional principle of issue preclusion." The defendant's statement of the law, however, is inaccurate. Neither res judicata nor collateral estoppel implicates subject matter jurisdiction. *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 223, 982 A.2d 1053 (2009).

Moreover, assuming, without deciding, that the defendant was entitled to again raise his preclusion claims at trial after the court rejected them on summary judgment,[9] he made no offer or proof as to any new information that he intended to introduce in support of those claims that was not already before the court in the summary judgment proceeding or at trial. Although the defendant, at trial, noted his intention to introduce additional evidence in support of his preclusion claims, he did not indicate what that new evidence was or what it would have proven. In our review of the record, the only offer of proof that we were able to find, and it is the only concrete offer cited to by the defendant in his brief to this court or in his posttrial brief, is his attempt to introduce into evidence the complaint in the Roszas grievance proceeding. In his attempt to introduce that evidence, the defendant simply indicated that he was offering it to show that the three grievances were the "same." He did not make any assertion that it went to the privity of the parties, which was the basis upon which the trial court had rejected his preclusion claims in his motion for summary judgment. The court had already considered the decision issued by the grievance committee in the Roszas matter and the transcript of the Roszas proceeding before the grievance committee, which had been admitted as a full exhibit at trial. We cannot conceive of what additional information could have been gleaned from the complaint in that matter that was not readily ascertainable from the fuller and more extensive record of those proceedings that was already in evidence. And the

defendant does not direct us to any such information.

Under the circumstances of this case, in which the defendant made no offer of proof in support of his attempt to relitigate his preclusion claims, we cannot conclude that the court erred in declining to revisit those claims.

## III

The defendant next claims that he was denied his constitutional right to due process of law when the court denied all of his discovery requests based upon the erroneous principle that an attorney is not entitled to any discovery in a disciplinary proceeding, which was the argument advanced by the plaintiff in a motion for a protective order. Our review of the record reveals that the court did not, in fact, deny "all" of the defendant's discovery requests. Rather, the court denied the plaintiff's motion for a protective order and ordered that "the [defendant's] motion for discovery shall be specific accompanied by a written statement demonstrating the reason and substantial need for discoverable material." Because the defendant was permitted to pursue discovery, albeit within the constraints ordered by the court, the defendant's claim is without merit.

## IV

The defendant next claims that the court, *Hon. Thomas F. Upson*, judge trial referee, lacked "jurisdictional authority over [the] attorney presentment," and thus its March 8, 2013 judgment is void as a matter of law because Judge Upson is a judge trial referee.

At no time before or during trial did the defendant challenge the court's authority to preside over the presentment. The defendant did not object to Judge Upson's consideration of the presentment until he received an unfavorable outcome in the proceeding. After the court issued its decision, the defendant moved to dismiss the presentment as "ipso facto void" on the ground that Judge Upson, as a judge trial referee, did not have authority to adjudicate the presentment. On April 12, 2013, the court denied that motion. Because General Statutes § 52-434a (a) affords judge trial referees the same powers and jurisdiction as judges of the court from which proceedings have been referred to them, the defendant's claim that Judge Upson lacked authority to preside over the presentment is without merit.

## V

The defendant finally claims that the court abused its discretion in suspending him from the practice of law for a period of two years because "[t]here was no evidence in the defendant's conduct of moral turpitude . . . [n]or was the defendant involved in any acts of dishonest conduct . . . ."[10] We disagree.

"A comprehensive disciplinary scheme has been established to safeguard the administration of justice, and [is] designed to preserve public confidence in the system and to protect the public and the court from unfit practitioners." (Internal quotation marks omitted.) *Statewide Grievance Comm.* v. *Burton*, 88 Conn. App. 523, 530, 871 A.2d 380 (2005), aff'd, 282 Conn. 1, 917 A.2d 966 (2007). "An attorney, as an officer of the court in the administration of justice, is continually account-able to it for the manner in which he exercises the privilege which has been accorded to him. His admis-sion is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks omitted.) Id., 530–31. "The trial court has inherent judicial power, derived from judicial responsibility for the administra-tion of justice, to exercise sound discretion to deter-mine what sanction to impose in light of the entire record before it." *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 678, 646 A.2d 781 (1994).

The American Bar Association has promulgated stan-dards for the imposition of sanctions. See *Burton* v. *Mottolese*, 267 Conn. 1, 55, 835 A.2d 998 (2003). "[A]fter a finding of misconduct, a court should consider: (1) the nature of the duty violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigation factors." Id.

The aggravating factors referenced in the standards include "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnera-bility of victim; (i) substantial experience in the practice of law; [and] (j) indifference to making restitution." (Internal quotation marks omitted.) Id. The mitigation factors include: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good

faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses." (Internal quotation marks omitted.) Id., 55–56.

In imposing the sanction of suspension, the court stated that it had considered both aggravating and mitigation factors in this case. The court noted that the defendant previously had been disciplined by the grievance committee for professional misconduct and determined that his conduct at issue here "cannot be viewed in isolation from his previous violation." The court found that, here, the defendant "demonstrated a pattern of misconduct, resulting in multiple violations of the Rules of Professional Conduct," and that, at the time he committed these violations, he "was a seasoned member" of the bar who had been handling probate matters since 1969. The court found that the defendant "committed acts of misconduct which violated his duty to the public, the legal system and the profession. [He] acted with a self-interested motive, and his actions were intentional and made with a full knowledge of the consequences." The court further noted that the defendant's "conduct reflect[ed] an insensitivity to his obligation of absolute fiduciary fidelity to those whom he [counseled] combined with a pattern of self-dealing and self-enrichment at their expense," and that his "ethical misconduct indicate[d] a deficiency of character and integrity incompatible with the high ethical standards required of attorneys who practice before the courts of this state." (Internal quotation marks omitted.) The court concluded that the defendant had "shown no remorse or recognition of the severity of the situation," that he "was fully able to comprehend the nature of his actions and to know they were wrong," but that he was "totally unrepentant."

Other than setting forth definitions of "moral turpitude" and "dishonest conduct," the defendant provides no analysis of his challenge of the sanction imposed upon him. On the basis of the court's findings of misconduct, which have not been challenged by the defendant, and its commentary on those findings, we cannot conclude that the court abused its discretion in suspending the defendant from the practice of law for two years. Accordingly, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In this opinion, we refer to Kathleen Gisselbrecht as the decedent and to Edward Gisselbrecht as Gisselbrecht.

[2] On March 14, 2013, the plaintiff filed a motion to modify the judgment to require the defendant to cooperate fully with the trustee appointed pursu-

ant to Practice Book § 2-64 as a condition of reinstatement. The trial court granted the plaintiff's motion to modify on March 15, 2013.

On March 27, 2013, the defendant filed a "motion to dismiss presentment complaint and to declare the judgment of March 8, 2013 to be ipso facto void." The trial court denied the defendant's motion to dismiss on April 12, 2013. On March 18, 2013, the defendant filed a "motion for mistrial, motion to set aside judgment based on judicial misconduct and motion for new trial." The court denied that motion as well.

[3] We note that the defendant has raised several challenges to the trial court's judgment that he categorizes as "constitutional" or "jurisdictional." Merely attaching those words to a claim of error, however, does not implicate those legal principles.

[4] The defendant also passively suggests that the current presentment is barred by the prior pending action doctrine. Because he does nothing more than mention that doctrine in the midst of his other preclusion claims, he has not briefed the application of that doctrine to the circumstances at hand, and we thus deem any claim grounded on the doctrine abandoned.

The defendant also suggests that this case is barred by the doctrine of judicial estoppel because it is duplicative of the Roszas proceeding and constitutes "an attempt to oppress the [defendant] and to subvert the grievance process and judicial integrity whereby the complainants are seeking an inconsistent result from that issued by the . . . grievance committee in the Rozsas decision, from this court, on the same facts and on matters arising from a common pecuniary interest." Because this argument is misplaced in calling for the application of the doctrine of judicial estoppel and, rather, essentially encompasses the defendant's preclusion claims as discussed herein, we decline to address this claim separately.

[5] The defendant first raised his preclusion claims at the hearing before the grievance committee, which noted that the dismissal of the Roszas complaint did have "some preclusive effect on the current matters," and accorded some weight to the decision of the grievance committee in that matter. On the basis of the grievance committee's conclusion in the Roszas matter that there was no violation of rule 1.1 of the Rules of Professional Conduct regarding incompetent representation, the grievance committee here declined to consider the probable cause findings regarding potential violations of rule 1.1.

[6] We are mindful that the doctrines of res judicata and collateral estoppel are not identical in their application or their proof. The defendant, however, uses the terms interchangeably, without regard to their different meanings or purposes, and, because their distinctions do not bear on our analysis of the defendant's claim on appeal, we need not address them separately.

[7] The denial of summary judgment on the basis of res judicata or collateral estoppel is a final judgment for purposes of appeal. *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 232, 4 A.3d 851 (2010).

[8] In denying the defendant's motion for summary judgment, the court noted that the defendant had not pleaded his preclusion claims as special defenses. The court nevertheless considered his preclusion claims because the plaintiff had not objected to them on the basis that the defendant had failed to plead them.

The defendant now claims on appeal that the court based its denial of summary judgment in part on the fact that he had not raised his preclusion claims by way of special defense, and argues that the court was therefore bound to consider them at trial because it had required him to plead them and he had done so. Because the court did not base its determination on summary judgment on his failure to plead his preclusion claims, the defendant's argument in this regard is misplaced.

[9] Although the defendant's claim, at first blush, appears to raise the interesting procedural issue of whether the rejection of the application of a preclusion doctrine as a matter of law can then be relitigated at trial because of the differing burdens and standards imposed by summary judgment and a trial on the merits, the resolution of the claim before us does not require an analysis of that issue.

[10] The defendant also claims that the denial of his motion to stay, which is governed by Practice Book § 61-11 (b), was unconstitutional. Pursuant to Practice Book § 61-14, "[t]he sole remedy for any party desiring the court to review an order concerning a stay of execution shall be by motion for review under Section 66-6." "Issues regarding a stay of execution cannot be raised on direct appeal." (Internal quotation marks omitted.) *Housing Authority* v. *Morales*, 67 Conn. App. 139, 140, 786 A.2d 1134 (2001). This court granted the defendant's motion for review, but denied the relief requested

therein. We thus decline to address this claim now.

———————————————————